This case under Docket 2-14-0776, people of the state of Illinois, plaintiff's athlete, D.J. Moore, defendant's counsel. Arguing on behalf of the defendant's counsel, Ms. Hickler D. Cantata. Arguing on behalf of the plaintiff's athlete, Mr. Richard S. Jones. Ms. Cantata. Good morning, your honors. Good morning. Counsel, may it please the court. My name is April Cantata. I'm arguing on behalf of defendant appellant, J. Moore, on behalf of the Office of the State Appellate Defender. There are two issues presented on appeal in this matter, your honors. The first is an ineffective assistance of counsel claim based on two unreasonable and prejudicial failures by trial counsel. The second is a sentencing issue regarding the trial court's consideration of two improper aggravating factors inherent in the delivery of sentence. Beginning with the first issue, it's Mr. Moore's position that no reasonable defense attorney would have forgone the opportunity to impeach Brian Swartz, a key state's witness, with evidence that he was currently on probation at the time of Mr. Moore's trial. Additionally, defense counsel's knowledge of this pending case triggered a duty to investigate Swartz's history of drug use and to discover evidence which he later discovered after trial that Swartz was a known heroin addict. Well, he asked him during examination if he used heroin, didn't he? He had some. Are you saying he did not in any way investigate the possession case in Lee County or that he did and he followed up with these limited questions? Your honor, the record shows that counsel failed to investigate that pending Lee County case before trial. So counsel had only been assigned to represent Mr. Moore for about two weeks before the trial commenced. He said that the state had informed him of this Lee County case. However, it was due to a mistake of law that counsel believed that he could not bring up that pending case to impeach Swartz. Additionally, he apparently did not realize that he should be investigating Swartz's history with drugs until such a time as after trial, Swartz overdosed and died from heroin. Well, Swartz was, he was impeached because he was a paid snitch though, correct? He was a paid informant. So, that came in and the fact that he was involved in numerous transactions in exchange for being paid by the police was before the jury, correct? Yes, your honor. The jury was aware that Swartz was a confidential informant and had participated in numerous controlled buys. And that he admitted that he was a deceitful person, that he engaged in deceit as part of the parcel of the deals that he had arranged. Your honor, Swartz never admitted to being deceitful. He actually quibbled at some length with trial counsel on that point. He actually did talk about the fact, defense counsel questioned his willingness to use deception and about his motives for working as an informant. Your motive is to get paid, isn't it? Well, I don't always get paid. You don't even have income. Yeah, you're right. I don't get paid good. I wish I had a job. I wish there was a job that I could work 40 hours and he keeps going on and they tell him to stop. But he talks about the fact that he will use, and this is the end. And you know, sir, and that's like what I do. If I can have one kid, one school, one needle from being stuck in some kid's arm and then I've done my job. So call it what you want with all due respect. So, I mean, he's admitting that he will go to lengths in order to save people. Yes, your honor. That purportedly honorable motive is what made this impeachment evidence so crucial and why it should have been in front of the jury. That was an attempt to mislead the jury regarding his motives for participating in these transactions, as well as the vulnerability that he experienced, either real or imagined, as a result of being on probation throughout the period of time where this drug buy was taking place, where this trial was taking place. He did say he wasn't fighting any case, so he wasn't testifying to get a good deal. It would be basically the theory of that statement. He was already on probation. He wasn't going to get any worse or any better by testifying. Well, as People v. Foley demonstrates, this issue of being on an active probation can create a potential bias to testify on behalf of the state, to cooperate with the state and cooperate with authorities because there is either real or imagined fear that perhaps your probation could get revoked or that there could be some adverse effect. And also in Swartz's case, he had a reason to curry favor with the state as part of that financial motive. The more useful he is to the state as an informant, the more money he gets. There's no question that his payments, whether they were big or small, were part of the record. That he was getting paid was part of the record, yes. However, defense counsel did not fully exploit that impeachment evidence that he had this pending drug case and was on probation as an additional means of showing that he had potential bias and potential motive to curry favor with the state. That's the first prong. If you've satisfied that counsel's performance fell below an objective standard, where's the prejudice? The defendant's caught. The money's there. There's basically drugs coming out of his body, out of his mouth, heroin that's recovered consistent with the testimony. So where's the prejudice? Where's the reasonable likelihood that the defendant may not have been convicted had that impeachment evidence been used? Your Honor, there were only two occurrence witnesses in this case, Swartz and then Tyler Smith. Both of those witnesses... But the deal is also observed by officers who are on surveillance, correct? The officers did not actually see Mr. Moore participate in the drug transaction. No, but he's caught immediately thereafter and he's spitting drugs out of his mouth. He's caught in possession of a controlled substance but not necessarily delivering a controlled substance. My point is, the testimony of Swartz is corroborated by the testimony of the police officer. Where's the reasonable likelihood of an acquittal here had that impeachment evidence been fully involved? So we're talking about specifically an acquittal as to the delivery charge. That's not to say that he might not have been found guilty of a lesser included offense. But in terms of the actual delivery charge, that was dependent upon the testimony of Swartz and Smith, the two people who were in the car and saw the transaction take place. And was the testimony between the two of them significantly different? I wouldn't say it was significantly different, Your Honor. There was some variation. There were variations, but the important one, the delivery is consistent between the two, correct? For the most part, yes. There's some differences as to who was handling the money, who was handling the drugs. But they both agreed that Mr. Moore was involved in the delivery. And that's the charge you're looking at. Exactly. So those two witnesses corroborated the testimony of one another. The problem is, we don't know how much weight the jury assigned to each individual witness' testimony. We know that they were aware that Tyler Smith was a heroin addict. The day of the offense, he was suffering from heroin withdrawals. He was hoping to get drug court. In his own pending drug case, he was a co-defendant of Mr. Moore's. So we knew that there was numerous reasons to question the veracity of his testimony. And the jury was instructed on that. However, with regard to Swartz, the only curative jury instruction that was given was that this person is an informant. If the jury determines that he was potentially biased or that his testimony was affected by self-interest, only under those circumstances should the jury look at his testimony with greater care. So the fact that there was no showing that he was being motivated by this potential bias due to his probationary status, that showing was not made. Had counsel impeached him with that case, then that showing could have been made and the jury would have known that they should have questioned his testimony and examined it with greater care. But the other officers who were involved in this testified that they had used him before. I think we're talking about 100 plus transactions, maybe even more than that. And even if that case is pending during that period of time, we have a significant number of other transactions that he has been relied upon and that have gone forward. So that also had to be considered by the jury, correct?  That he had participated in other controlled bias, yes. And that he was relied upon generally by these police officers, the detective from Lee. So this possession that he's on, this possession probation, is not isolated to this case. He had gone through many transactions in that case that have been pending. He had gone through many transactions, but I'm under the understanding that this was his first time testifying at trial. He had not previously testified on behalf of the state in any of those other cases. So it's also, I think, relevant to look, when you look at the docket sheets, this probation was only supposed to be 24 months and it was still going on long after that term because there were numerous pay or repair orders entered. So he was having trouble paying off his balance in that case. And I think that that makes it even more relevant that he has this increased financial incentive to cooperate with the state, keep working as an informant, and be useful to the state in getting additional convictions to protect his probation, as well as his position as a paid informant. But he still had to pay. I mean, they weren't reducing his payments because he was testifying. He still had to. Because we're two different counties. Right. We're two separate counties, and unless we have evidence that we've got some state's attorney agreement between them, he's got a Lee County obligation that's set, and he's testifying in Overton County. Yes, Your Honor. The fact of his probationary status is what's relevant. So it doesn't matter where he's on probation. These are neighboring counties, and it's not unreasonable to infer that there was some knowledge or cooperation between those two states' attorneys' offices. However, what's relevant is that he may have been vulnerable to pressure, real or imagined, and the jury was not presented with that information. Well, they certainly were presented with instructions. However, two non-IPI instructions offered by defense counsel, which were given over the people's objection, that the testimony, his testimony, and Smith's testimony were to be considered with caution and examined and weighed with greater care than any of the other witnesses. So didn't that? Wasn't that enough? No, Your Honor. Why not? So first, there was one non-pattern jury instruction given over the state's objection, and that was the one that named both Swartz and Smith as informants and instructed the jury to examine their testimony with greater care only if it determined that the testimony had been affected by self-interest, an agreement with the government, his own interest in the outcome of the case, or by prejudice against the defendant. The other instruction that was given was pattern instruction 3.17 regarding accomplice witness testimony. That applied only to Smith, and it didn't name Swartz or Smith. It only applied to the co-defendant. So why wasn't the first one sufficient then to alert the jury to examine his testimony with more caution? Because, Your Honor, the effectiveness of that instruction depended on some showing that Swartz had bias, interest, or motive to testify falsely. So you're saying people would have believed that, as an informant, his motive was one to keep the community safe and no other? The jury very well may have believed that based on his testimony. However, had he been impeached, hey, aren't you on probation? Don't you have reason to curry favor with the state to protect your own self-interest in that case? In addition to that, you sat here and told the jury you're not in trouble, you're not fighting off any cases. Well, don't you have a pending case right now? What's the case you referred to earlier? You said it was Foley? Foley, yes. And what were the facts of that case? The Foley case, the portion of it that was cited in the opening brief that was particularly significant was this issue of a witness being on probation and the court not allowing defense counsel to impeach that particular witness with information about this probation. So the court in that case made a similar kind of mistake as defense counsel made here. Defense counsel here thought that he couldn't bring up that case because it wasn't admissible for impeachment under Montgomery. The trial court in Foley made a similar determination, but it was the fact that the probation was pending, the status as a probationer is what made it relevant for impeachment to show that there is this real or imagined pressure that the witness may have been vulnerable to. So it was error for the attorney to not be allowed to question the witness about his status as a probationer. And specifically, that case is cited on page 20 of the opening brief. There's just a parenthetical there with what I just told you about. So moving to the second issue at this point, it's a sentencing issue. The problem there is that the trial court considered both receipt of compensation and the threat of harm as aggravating factors in fixing Mr. Moore's sentence. There's ample authority for the proposition that those are not to be properly considered in a delivery case because they're inherent in the offense. The court also said it gave full consideration to all the factors, correct? Yes, Your Honor. Yes, he did give consideration to mitigating factors, as well as the four aggravating factors that he expressly found were applicable in this case. Among those factors were receipt of compensation. He said specifically, I find that statutory factor A2 is applicable, receipt of compensation, as well as statutory factor A1. Could you finish your statement? Thank you, Your Honors. Mr. Moore asked that this court remand this cause for a new trial because he received ineffective assistance of counsel, or alternatively, remand this cause for restatement on the delivery charge.  Thank you. Good morning, Your Honors. Counsel Richard London on behalf of the people of the state of Illinois. Your Honors, there's no question in this case that the defense attorney skillfully and pretty aggressively impeached Mr. Schwartz. Could he have done more? Could he have brought up the probation case? Sure. Was it necessary? No. The judge found it merely would have been cumulative, that the evidence was consistent with Mr. Smith, that the additional impeachment was unnecessary, certainly not prejudicial. It is not inconceivable that when the witness said, not fighting off a case, that probation to him wasn't fighting off a case. It had been pending since 2009. I'm pretty sure that's the exact same case that people fronted, that he had been convicted of in 2009, and that was for a delivery of prescription drugs. So it had been disclosed. The non-IPI instruction clearly informed the jury they were to view both witnesses with great caution and differently than other witnesses. What about the fact that the defense counsel, whether he was in the case for two weeks or two months or two years, should have looked into this witness a little more carefully and ultimately was able to get an affidavit from a cousin that he had a long history of drug use? What should he have done prior when he knew he had this paid informant who has a bit of a checkered past? Until he died of a drug overdose. To be honest, there was no reason to believe that he necessarily, and again, I don't want to necessarily strain the credibility, but it's not inconceivable. I'm not saying it's likely. It's not inconceivable that after all these years of testifying, he said, hey, what's heroin all about, and decided to try it himself. Well, it's not just that. The officer's basically using a blind eye and dealing with an informant not recognizing the person as a heroin addict. Is the officer using a blind eye, or did the, maybe he didn't use frequently? You have an officer. You have actually a couple officers. You have the people. You have the prosecutor all saying we weren't aware of it. I mean, you're not dealing with. The prosecutor, whether the prosecutors were or not, the agents who were dealing with him on. Claim that they weren't aware of it. Apparently they were dealing with him all the time. Well, he had dealt with various agencies all the time. Well, the government, the state is responsible for the knowledge that all those agencies have collectively. Correct. And if there was a viable reason to believe that he had been convicted previously, if he had, again, not to strain credibility, but in the moot yesterday discussing that exact topic, one of my mooters said, well, reasonably, I have a large Catholic family. I have 70 cousins. Would it have been realistic for someone to go interview 70 different people? I have no idea of the credibility of this particular cousin. The cousin gives an affidavit saying, oh, yeah, it was well known. Well, apparently it wasn't well known to the police personnel. You're not dealing with in drug cases, especially in small drug cases. Unfortunately you're never going to be, well, I guess fortunately, you're never going to be dealing with Boy Scouts. A lot of times you are dealing with the family because the informant doesn't have the resources to put himself up. He's living with family members. And, again, in particular circumstances that might very well be the case. And you might be dealing with family, and in different circumstances that might be appropriate. But here all of the evidence was that prior to trial neither the people nor defense counsel had any reason to believe that he was anything more than a mope that was involved and certainly tried to self-aggrandize and boast that, well, we, and he's helping the community and helping the police. But there was no reason to believe that he was necessarily a drug dealer himself. The only conviction he had was the sale of prescription drugs. So until you learn after the fact, again, hindsight is 20-20. Until after the fact that they learned that he died of a drug overdose, specifically heroin, at that time was the first time counsel was really put on notice and said, oops, let me check further. What about the, can we turn to the sentencing argument? Of course. What about the improper consideration of factors inherent in the offense? Well, I would point this court to this court's decision in McCain. As we cited and even more so, in McCain the court specifically not only dealt with the concept of referencing the harm that drugs deal. In McCain they also specifically referenced compensation. So in an even more arguably egregious manner, the trial judge in McCain said both drugs are harmful to society. You get money for it. You tend to commit burglaries and other crimes to do it, which, to be honest, the defendant said himself that I will do anything. So this court in McCain said that's okay. We understand that a judge is going to comment on that. A judge cannot necessarily separate his comments. The question is we need to look at what impact we think it had. Can we look at and can it be determined for the record what weight was already placed on those factors? So was it a comment or was it improper aggravating factors considered? Well, how can we tell from what he said? Well, in a vacuum you can't. You can never tell. If you obviously make a comment about referencing something that is inheriting the crime itself, you can't tell. What you can tell on the facts of our case, what is the sentence he gives? The sentence he gives is incredibly lenient. On 6 to 30 years with a guy with 14 prior felonies, he gives an 11-year sentence. If anything, strangely enough, we would argue that it was almost a benefit to defendant because the fact that understand that the people's argument was in response to the defendant's argument relating to the woes that defendant was going through and what he was subjecting himself to and the fact that he was a long time that he was on his own since he was 13, he had been abusing drugs for years. The judge said, fine, there are problems and the community is dangerous and heroin is cheaper than ever and it's bad, and you did receive compensation. However, the judge then turned around and said, in mitigation, I'm finding that the fact that you were a long time drug abuser and that you will do anything, I'm finding that you acted under strong provocation and there is a reason why you did this. You did this to feed your drug habit and as a result, the language in mitigation utilized, arguably, the negative that he used in aggravation and more importantly, when you look at the record, the question is, was the disputed factor significant addition to the finding and the ultimate resolution and the sentence? And we're saying, a guy with 14 priors that receives 11 years and a 6 to 30 year sentence should be thrilled with the sentence he got and that is clearly evident from the record that the judge did not overweigh the factors in aggravation. And when he made those comments, he was not just referring to this isolated incident, he was referring to the defendant's life. He was referring to the problems in the community, but yes, the defendant's life specifically. His choices. He took that exact same language that he was saying, that we have problems in the community and saying, you are a perfect example. You, as this problem with drugs, your life has been, as the defendant argued in allocution, as well as defense counsel, your life has been sad. I do think that probably you should have taken advantage of some of these prior examples and utilized. I can't believe that you've never been given a benefit before. You probably have been, but regardless, I'm going to give you that benefit. I'm going to find that, even if you may have before, that I'm finding in mitigation that under the specific facts of your case, that the mitigation tends towards a lesser sentence. Well, the state didn't think there was any mitigation. Well, obviously the state argued for 28 years. But the judge starts out, in aggravation, comma, I find the defendant's conduct caused or threatened serious harm. I mean, he's not saying drugs are a terrible blight in the community. We need to deal with them. They cost people their lives, and they make bad people maybe more bad because it gives them more opportunity to go out. He just says, in aggravation, he's now being very specific as to this case. So how do we get around that, even with the case? I do think the language in McCain is somewhat similar. And more importantly, should the judge have used, I think he misspoke as opposed to was necessarily overly weighing the factors. Should he have said, yeah, the evils of drugs are bad, however I'm giving you the benefit of mitigation, sure. Would I have liked him to have spoken differently? Of course. But McCain involved one factor. No, McCain involved both. McCain specifically referenced both the evil and the receipt of compensation. Correct. Well, I didn't cite it specifically. When I went back over, it definitely refers to both of those and says that, yes, we understand that both of those are inherent, but again, we look at. And the sentence in McCain was much more severe for an individual that at least arguably did not have anywhere near the priors that this individual had. And your argument is we don't look in isolation at the facts. Exactly. You have to look at the retaliant circumstances. And given the sentence for a guy with 14, 15 priors, it's not exactly clear. The sentence was incredibly lenient. Let me finally finish with an unusual request, and that is given that the defense bar has very recently started arguing the language in the McCarter case. We put in our brief and are asking that this court specifically consider the language that we believe is dicta relating to that a review of a Strickland analysis only needs a negligible ability to overcome a Strickland analysis. We believe that the language in McCarter is clearly dicta, as can be shown by the fact that McCarter did a full Strickland analysis, and again, despite factors that were clearly more significant where they found that counsel was clearly had not exercised good judgment, but that there was no prejudice due to the strength of the state's case. But still, McCarter, to the very unlikely extent that it meant what it said, with that one thing which was taken from a Seventh Circuit habeas case, obviously, McCarter can't overrule either Illinois or U.S. Supreme Court. It can't overrule years of jurisprudence. A jurisdictal likelihood. Exactly. No more, no less. We can't change that. And, of course, but we are asking to the extent that we're seeing that a lot. Do you agree that there's no requirement that there is a showing by a preponderance because that's an actual innocence standard? Exactly. It's somewhere in between. Exactly. I mean, it's kind of like reasonable doubt. We can't define it. We can't attach. It's a fair shot. This is not PC. This is not a gist standard. And we would ask that this Court not only comment on that, but strangely, the strange request, the unusual request, is consider publishing even if it's just that language. Thank you. Thank you. Ms. Kincaid. Your Honors, with regard to the second issue, I just want to point out, this is not an excessive sentence argument. We're not alleging that 11 years was an excessive sentence for Mr. Moore to get in this case. Our issue is with the fact that we cannot say, based on the Court's comments, that it applied so little weight to those two improper factors that it was so insignificant to its sentencing determination that we can conclude that it didn't lead to a greater sentence. We can't say that. Consistent with your other arguments, you're arguing that there's a reasonable possibility that the judge may have given a lower sentence had those factors not been considered. Yes, Your Honor, exactly. The issue is, as opposing counsel mentioned, we don't know how much weight was given to those two factors. So the proper remedy in that situation is to remand the cause for resentencing so that the trial court can, again, consider the matter, consider only proper factors, and properly exercise its discretion in fixing a sentence. What about counsel's comments about McCarter and the language? It's kind of an outlier that we should not adopt that. Yes, Your Honor, and I tried to touch on that in the brief a little bit. I think that we're in agreement that what McCarter is proposing is that the outcome, the sufficient probability to undermine the confidence of the outcome is something that's less than a preponderance of the evidence, but something greater than, better than, a negligent standard. And that's what McCarter is articulating. It's drawing from some Seventh Circuit language used in a couple of cases there to merely try to articulate the degree of probability that is sufficient to undermine confidence in the outcome. So to point out that we're somewhere in between those two things. Well, what's wrong with just using the term reasonable probability? Well, it's somewhat of a vague term. So it's reasonable doubt that we've been told that we can't define it. Right. Let's leave it alone. All right. Well, you know, so again, I mean, this is merely an attempt to articulate the degree of probability, what that is, and guiding, reviewing courts, and making these difficult determinations using this vague terminology. So we don't think that it's necessary for this court to specifically address that language, but to continue applying the same Strickland standard it always has with perhaps some additional clarity as to how other courts have tried to interpret that sufficiency standard. Additionally, I wanted to point out with regard to the first issue, the only impeachment evidence that was before the jury regarding Brian Swartz was that he was convicted of financial exploitation in 2009. The jury was not given any information about his involvement in any drug cases. All that it was aware of was that he denied having ever used heroin. That was the only information. So defense counsel argued that he personally believed Swartz was a heroin addict, and the entire strategy employed by defense counsel was to undermine Swartz's credibility. However, he left some significant evidence for impeachment on the table where it would have been relevant, and it was not cumulative to the other impeachment evidence that was before the jury. More relevant than his comment or our paraphrasing of his comment that he would use any means in order to, including lying, being deceitful to, say, one child, essentially? Yes, Your Honor. I think that it's far more significant impeachment evidence than that because what's wrapped up in that statement is that his motives for engaging in disinformant behavior are not self-serving. They are to serve the community. And that's why he did, and that's part of the original, the background of this. That's why he got involved in this case, according to his testimony. Because of, you know, this person that he knew and this amount of heroin, and he didn't want any kid. So he lied to these people. He lied outright to these people, and he apparently lied outright to about another 150 others during the course of his crusading for the health of the community. Yes. The way he posed it to the jury, this was a necessary evil to ensure that children could be saved from 1.2 grams of heroin being delivered to an informant. So why couldn't they assume that he was lying about everything he said in order to get Mr. Moore off the street? Again, the honorable motives angle, I think, undermines the value of that impeachment that he sort of grudgingly agreed that he does lie, but only to drug dealers who need to criminalize. Well, it's pretty clear. That noble motive may have existed, but he got paid. He was paid to do each and every transaction. It was not like he was doing this out of, you know, just for the good of the community. That was his sole source of income. That's how he was making his living, was off the streets by setting people up. Yes, Your Honor. The noble motive doesn't cancel that out, does it? Well, Your Honor, I think it's relevant that he had already been paid to conduct the controlled buy in this case. He was not getting any money taken away or getting any additional money for justifying his testimony at trial, his further interest in incurring favor with the state. I think it's relevant because the payment was a done deal. He had nothing else to gain. Thank you, Your Honors. Thank you, counsel, for argument this morning. We will issue a decision in due course. We have at this point finished our argument for the day, and therefore we will stand adjourned.